UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

-vs-                                           REPORT AND RECOMMENDATION
                                               and DECISION AND ORDER
EVELYN RIVERA-BANCHS,                          20-CR-6046-EAW-MJP-3


                          Defendant.

_____

## APPEARANCES

For the United States:                 Everardo A. Rodriguez, A.U.S.A.
                                        United States Attorney's Office
                                        100 State Street, Suite 500
                                        Rochester, New York 14614


For the Defendant:                      Laura Anne Vanderbrook, Esq.
                                        Vanderbrook Law, P.C.
                                        1 East Main Street
                                        Floor 10
                                        Rochester, NY 14614

## REPORT AND RECOMMENDATION

## INTRODUCTION

**Pedersen, M.J.** In a superseding indictment filed on March 25, 2021, ("Indictment") the Grand Jury charged defendant Evelyn Banchs ("Defendant") with money laundering in violation of Title 18, United States Code, §§ 1956(a)(1)(B)(i) and (h). (Count 10, ECF No. 119.) The Indictment also includes a forfeiture allegation against Defendant should she be convicted of the crime charged. (*Id.* at 8–9.) On

October 28, 2021, the Honorable Elizabeth A. Wolford referred this case to the undersigned for all pre-trial matters including all pre-trial matters that a Magistrate Judge may hear and determine pursuant to 28 U.S.C. § 636(b)(1)(A), and those which a Magistrate Judge may hear and thereafter file a report and recommendation for disposition pursuant to § 636(b)(1)(B). (ECF No. 190.)

On September 14, 2021, Defendant filed her omnibus motion. (Vanderbrook Aff., Sept. 13, 2021, ECF No. 172–1.) The government filed what is titled as its "Response to Defendant's Motion for Grand Jury Records" on September 28, 2021. (Gov't Resp., ECF No. 177.)

On October 12, 2021, the undersigned heard oral argument on the omnibus motion. (ECF No. 180.) The undersigned issued a decision on a majority of the issues raised in Defendant's omnibus motion but reserved on Defendant's motion for dismissal of the Indictment based upon insufficiency, selective prosecution, and/or vindictive prosecution and suppression of tangible evidence. (ECF No. 186.) On October 15, 2021, Defendant filed an affidavit in support of her omnibus motion. (ECF No. 182.)

After hearing oral argument and reviewing all motion papers, the undersigned recommends that the District Court rule as follows:

1.  Deny Defendant's motion to dismiss the Indictment based on insufficiency;

2.  Deny Defendant's motion to dismiss the Indictment based on selective prosecution;

3.      Deny Defendant's motion to dismiss the Indictment based on vindictive

prosecution; and

4.      Deny Defendant's motion for suppression of tangible evidence and for a

hearing.

## STANDARD OF LAW

The relevant portion of 28 U.S.C. § 636(b)(1)(A) provides that the undersigned may "conduct hearings, including evidentiary hearings, and [ ] submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A)." The exceptions in subparagraph (A) include motions to dismiss an indictment and to suppress evidence. 28 U.S.C. § 636(b)(1)(A).

## DISCUSSION

### *Findings of Fact Regarding Defendant's Motion to Dismiss the Indictment.*

Defendant contends that the Indictment should be dismissed on three separate grounds: insufficiency, selective prosecution, and vindictive prosecution. (Vanderbrook Aff. at 4.) With respect to insufficiency, Defendant argues that the evidence against Defendant is "tenuous at best," amounting to "innocuous bank account statements." (*Id.*) Defendant further contends that there is no evidence demonstrating that she knew that the money her husband and co-defendant, John Rivera-Banchs ("Rivera-Banchs") deposited in her account resulted from the illegal sale of drugs. (*Id.*)

3

At oral argument, the government argued that it presented supporting proof of the charge for money laundering to the grand jury, and it found enough evidence to indict Defendant. The government further contends that the Indictment is valid on its face and is not subject to dismissal at this stage in the case. (Gov't Resp. at 3, ECF No. 177.) In addition, at oral argument the government argued that large amounts of money flowed into and out of Defendant's account and Defendant only made approximately $8,000.00 a year through her employment, so it would be illogical that Defendant did not know that Rivera-Banchs was engaging in money laundering.

Defendant also asserted that the government's decision to indict her and not others, such as confidential informants or other unindicted co-conspirators, demonstrates selective and/or vindictive prosecution. (Vanderbrook Aff. at 4.) Defendant argued that the government only indicted her after Rivera-Banchs refused to cooperate, which she alleges is demonstrated by the year-long delay in indicting Defendant. (*Id.*) At oral argument, Defendant reiterated that if Rivera-Banchs had cooperated, the government would not have indicted Defendant because there is no evidence demonstrating that she knew the money flowing through her account constituted drug proceeds, and knowledge is a required element of money laundering.

*Legal Conclusions Regarding Defendant's Motion to Dismiss the Indictment.*

### a.   *Insufficiency.*

"A motion to dismiss an indictment must meet a high standard." *United States v. McClain*, No. 19-CR-40A, 2019 WL 8955241, at *2 (W.D.N.Y. Dec. 9, 2019), report

and recommendation adopted, No. 19-CR-40-A, 2020 WL 1503227 (W.D.N.Y. Mar. 30, 2020) (citation omitted). As a general rule, "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974); *accord United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998); *United States v. King*, No. 98-CR-91A, 2000 WL 362026, at *8 (W.D.N.Y. Mar. 24, 2000); *United States v. Pirk*, 267 F. Supp. 3d 406, 415 (W.D.N.Y. 2017).

To meet this sufficiency standard, an indictment need "do little more than [ ] track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999) (citations omitted). "Generally, the indictment does not have to specify evidence or details of how the offense was committed." *United States v. Moses*, 512 F. Supp. 3d 448, 455–56 (W.D.N.Y. 2021) (citation omitted). This is because "the validity of an indictment is tested by its allegations, not by whether the Government can prove its case." *Id.* at 456. "[A]n indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence." *United States v. Calandra*, 414 U.S. 338, 345 (1974).

Additionally, "[i]t is axiomatic that, in a criminal case, a defendant may not challenge a facially valid indictment prior to trial for insufficient evidence. Instead, a defendant must await a Rule 29 proceeding or the jury's verdict before he may argue evidentiary sufficiency." *United States v. Gambino,* 809 F. Supp. 1061, 1079 (S.D.N.Y.

1992); *United States v. Francis*, No. 08-CR-6098L, 2008 WL 4426580, at \*3 (W.D.N.Y. Sept. 25, 2008) (finding defendant's motion to dismiss the indictment premature and stating that "[i]t is well-established that an indictment that is valid on its face, as is the case here, cannot be dismissed on the grounds that it is based on inadequate or insufficient evidence.")

For these reasons, when considering a motion to dismiss an indictment, the Court must not conflate or confuse permissible claims based on sufficiency of the government's allegations with impermissible claims based on sufficiency of the government's evidence. *See, e.g., United States v. Elson*, 968 F. Supp. 900, 905 (S.D.N.Y. 1997). "[I]t would run counter to the whole history of the grand jury institution to permit an indictment to be challenged 'on the grounds that there was inadequate or incompetent evidence before the grand jury.'" *United States v. Williams*, 504 U.S. 36, n. 11 (1992) (quoting *Costello v. United States*, 350 U.S. 359, 364 (1956)). Thus, "[a]n indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits." *United States v. Mullen*, 451 F. Supp. 2d 509, 550 (W.D.N.Y. 2006) (quoting *Costello*, 350 U.S. at 363).

To the extent Defendant challenges the sufficiency of the government's evidence, Defendant's motion is premature. Even if this were not the case, standing alone, Defendant's bare conclusory allegation that the grand jury may not have heard her defense that she believed the funds flowing into and out of her bank account were from Rivera-Banchs' legitimate businesses, does not justify dismissal. Since the

Indictment contains the elements of the offenses charged (Count 10), tracks the language of 18 U.S.C. § 1956(a)(1)(B)(i), and states the general time and place where the alleged crimes occurred, it is not facially insufficient as claimed by Defendant. Further, there has been no suggestion that the matter was not presented to a legally constituted, unbiased grand jury. Accordingly, the undersigned recommends that Defendant's motion to dismiss the Indictment for insufficiency be denied.

### b. Selective Prosecution

The Second Circuit has provided that the standard required for dismissal of an indictment on the basis of selective prosecution is high. *United States v. Bout*, 731 F.3d 233, 238–39 (2d Cir. 2013). To be successful on a claim for selective prosecution, a defendant must establish that she was "treated differently from other similarly situated individuals and that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure [her]." *United States v. Stewart*, 590 F.3d 93, 121 (2d Cir. 2009) (internal quotations and citations omitted); *accord United States v. Fares*, 978 F.2d 52, 59 (2d Cir. 1992); *United States v. Moon*, 718 F.2d 1210, 1229 (2d Cir. 1983), *cert. denied*, 466 U.S. 971 (1984).

Broadly referring to "all of the papers had herein" Defendant contends that the government engaged in selective prosecution because the government did not commence proceedings against "other individuals including the Confidential Informants and other unindicted co-conspirators with far greater culpability than the Defendant." (Vanderbrook Aff. at 4.) Defendant does not provide any specifics

7

regarding who she contends was similarly situated and how they were similarly situated. Further, the government is correct that Defendant has failed to assert any impermissible basis upon which the government chose to indict Defendant, whether it be race, religion, intent to impact the exercise of a constitutional right, or an intent to injure Defendant. Accordingly, the undersigned determines that Defendant has failed to meet the high standard for dismissal on this ground and recommends that Defendant's motion to dismiss the Indictment on the ground of selective prosecution be denied.

### c. Vindictive Prosecution

As with a claim for selective prosecution, there is a high standard required for dismissal of an indictment based upon vindictive prosecution. *Bout*, 731 F.3d at 238. "[T]he decision as to whether to prosecute generally rests within the broad discretion of the prosecutor, and a prosecutor's pretrial charging decision is presumed legitimate." *United States v. Sanders*, 211 F.3d 711, 716 (2d Cir.), *cert. denied*, 531 U.S. 1015 (2000) (citations and internal quotation marks omitted). Nonetheless, "a prosecution brought with vindictive motive, penalizing those who choose to exercise constitutional rights, would be patently unconstitutional." *Id.* (internal quotation and citations omitted). A court will dismiss an indictment if actual vindictiveness has been demonstrated, or if, under the circumstances, "there is a presumption of vindictiveness that has not been rebutted by objective evidence justifying the

prosecutor's action."[1] *Id.* (internal quotations and citations omitted). To demonstrate an actual vindictive motive, a defendant must show that "(1) the prosecutor harbored genuine animus toward the defendant, or was prevailed upon to bring the charges by another with animus such that the prosecutor could be considered a 'stalking horse,' and (2) [the defendant] would not have been prosecuted except for the animus." *Id.* (citations omitted).

Defendant's assertions that the government engaged in vindictive prosecution because it only indicted Defendant after Rivera-Banchs refused to cooperate, and indicted Defendant a year after the initial indictment, fail to satisfy the high standard set forth by the Second Circuit for dismissing the Indictment on vindictiveness grounds. These allegations do not demonstrate animus on the part of the government or establish that such animus was the reason for indicting Defendant. *United States v. Bailey*, No. 15-CR-6082G, 2016 WL 6995067, at *37 (W.D.N.Y. Nov. 29, 2016) (denying dismissal of indictment based on actual vindictiveness where defendant failed to demonstrate the "prosecutor harbored genuine animus toward him.") Further, the allegations do not show that Defendant was indicted to punish her or to retaliate against her for exercising any constitutional right. *Sanders*, 211 F.3d at 717 (denying defendants' motion to dismiss the indictment based on vindictive prosecution where the court found that "[i]n no way does the evidence show that the prosecution was brought to punish the defendants or to retaliate against them for

---

[1] Because this presumption does not attach pretrial, it does not apply here.  *See Stewart*, 590 F. 3d at 122 (noting that the Second Circuit has "consistently adhered to the principle that the presumption of prosecutorial vindictiveness does not exist in a pretrial setting").

exercising their rights.") Based upon the forgoing, the undersigned recommends that the district court deny Defendant's motion to dismiss the Indictment on the basis of vindictive prosecution.

### Findings of Fact Regarding Defendant's Motion to Suppress Tangible Evidence.

The undersigned issued a search warrant for 61 Teralta Street based upon a finding of probable cause as detailed in the Affidavit of Sabatino Smith, Special Agent with the Drug Enforcement Administration, sworn to on February 19, 2020. (Smith Aff. at 142, ECF No. 1 in 20-MJ-543.) On February 22, 2020, the undersigned issued another search warrant for 61 Teralta Street to permit law enforcement to search for and seize a concealed bag of keys, which law enforcement learned about through a monitored phone conversation between Rivera-Banchs and Defendant after Rivera-Banchs was taken into custody. (Smith Aff., at 4–6, Feb. 22, 2020, ECF No. 1 in 20-MJ-543-MJP-1.)

Defendant requests that "hearings be held regarding the execution of Search Warrants for the residence and personal property of Defendant." (Vanderbrook Aff. at 4.) In addition, Defendant moves to suppress any tangible items seized from Defendant's residence or her person on the basis that they were taken in violation of Defendant's Fourth Amendment rights and unspecified provisions of the "Federal Rules of Criminal Procedure, USCA and all appropriate provisions of Federal Law." (Vanderbrook Aff. at 5.) Defendant further contends that the search warrants were defective such that the seizure of any items pursuant to the search warrants was improper. (*Id.*) Defendant does not specify which search warrants she is challenging.

The government opposed this motion on the basis that Defendant failed to provide an affidavit from someone with personal knowledge that would establish her standing to challenge the search of any premises. (Def.'s Resp. at 5.) Consequently, the government argued that Defendant failed to satisfy her burden that she had a reasonable expectation of privacy with respect to the premises or items searched. (*Id.*) At oral argument the government reiterated that Defendant failed to demonstrate standing and further asserted that it was not even clear as to what location Defendant's motion to suppress applied. The undersigned provided Defendant with the opportunity to submit an affidavit addressing standing, which she did on October 15, 2021. (Def.'s Aff., ECF No. 182.)

In her affidavit, Defendant asserts that she resides at 61 Teralta Street, Rochester, New York, and that she, therefore, has standing to challenge the search and seizure of evidence from that location as well as to challenge the search warrants. (Def.'s Aff. at 1.)

***Legal Conclusions Regarding Defendant's Motion to Suppress Tangible Evidence.***

Here, Defendant has not articulated the basis for her conclusory statement that her rights were violated, leaving the Court to speculate. First, the Court notes that the searches of 61 Teralta Street were conducted pursuant to two warrants in compliance with the Fourth Amendment. Further, while Defendant does assert that the search warrants for 61 Teralta Street were defective, Defendant failed to articulate how the warrants were defective. Defendant simply makes the unsupported statement that "the Search Warrants were defective." (Vanderbrook Aff.

at 5.) Thus, the Court speculates that Defendant is attacking the basis for the warrants.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "To establish probable cause to search a [place], two factual showings are necessary—first, that a crime was committed, and second, that there is probable cause to believe that evidence of such crime is located at the [place]." *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983).

"[P]robable cause to search a place exists if the issuing judge finds a 'fair probability that contraband or evidence of a crime will be found in a particular place' and a federal court must apply a 'totality-of-the-circumstances analysis' in pursuing this inquiry." *United States v. Ponce*, 947 F.2d 646, 650 (2d Cir. 1991), *cert. denied*, 503 U.S. 943 (1992) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). When reviewing the validity of a search warrant:

> the duty of [the] court . . . is simply to ensure that the magistrate had a substantial basis for . . . conclud[ing] that probable cause existed. A search warrant issued by a neutral and detached magistrate is entitled to substantial deference, and doubts should be resolved in favor of upholding the warrant.

*United States v. Rosa*, 11 F.3d 315, 326 (2d Cir. 1993), *cert. denied*, 511 U.S. 1042 (1994) (internal quotations and citations omitted); *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007) ("[A] reviewing court must accord considerable deference to the probable cause determination of the issuing magistrate. . . ."). "[A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit [applying for a warrant] should

not take the form of de novo review." *United States v. Smith*, 9 F.3d 1007, 1012 (2d Cir. 1993). "'[R]esolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.'" *Id.* (quoting *United States v. Ventresca*, 380 U.S. 102, 109 (1965)); *see United States v. Clark*, 638 F.3d 89, 93 (2d Cir. 2011) ("Such deference derives not only from the law's recognition that probable cause is 'a fluid concept' that can vary with the facts of each case, but also from its 'strong preference' for searches conducted pursuant to a warrant, and its related concern that '[a] grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." (alteration in original) (citations omitted).

With respect to the search warrant in case number 20-MJ-531-MJP-1, the undersigned reviewed and signed the search warrant for 61 Teralta Street and at that time determined that the accompanying affidavit provided probable cause to believe a crime had been committed and evidence of that crime would be found at 61 Teralta Street. The affidavit supporting the search warrant application for several properties, including 61 Teralta Street, consisted of 38 pages of detailed allegations supporting the searches of that property, and many others. (Smith Aff., ECF No. 1 in 20-MJ-531-MJP-1.)

Upon its review of the affidavit and search warrant, the undersigned finds no basis for Defendant's conclusion that the search warrant was defective. The affidavit in support of the search warrant describes law enforcement's investigation into the narcotics trafficking and money laundering activities of Defendant's husband,

Rivera-Banchs, who is alleged to be responsible for trafficking cocaine in Rochester, New York.  The warrant further establishes that 61 Teralta Street is Rivera-Banchs' residence, including stating that the utilities for that location have been in Rivera-Banchs' name since May, 2008. (Smith Aff. at ¶¶ 16, 17, 32 in 20-MJ-531-MJP-1.) The affidavit states that Rivera-Banchs sold cocaine in controlled buys to a confidential source inside 61 Teralta Street on three different occasions—July, September, and December 2019. (*Id.* at ¶ 32)  In addition, while not occurring at 61 Teralta Street, the confidential source engaged in controlled purchases of cocaine from Rivera-Banchs in January and February, 2020. (*Id.* at ¶ 29.) The affiant concluded that based on the forgoing there was probable cause to believe that drugs, cash proceeds, and tools, instrumentalities and records of drug trafficking were located at 61 Teralta Street (*Id.* at ¶ 33.) After reviewing the search warrant application and in applying the totality of the circumstances approach, as required by law, the undersigned determined that there was a fair probability that contraband or evidence of a crime would be found at 61 Teralta Street.

With respect to the search warrant issued in case number 20-MJ-543-MJP-1 for the search and seizure of the concealed bag of keys located at 61 Teralta Street, the undersigned reviewed and signed the search warrant and at that time determined that the accompanying affidavit provided probable cause to believe a crime had been committed and evidence of that crime would be found at 61 Teralta Street. The affidavit supporting the search warrant application consists of six pages detailing

why the affiant believed that the concealed keys constituted evidence of drug dealing, unexplained wealth, and/or money laundering. (Smith Aff. in 20-MJ-543-MJP-1.)

More specifically, in his affidavit Agent Smith indicated that Rivera-Banchs owns at least nine properties in the Rochester area, which are either under his mother's name or that of his corporation, J&L Transrealty, Inc. (Smith Aff. at 3 in 20-MJ-543-MJP-1.) Agent Smith averred that he had knowledge that several of the properties had been utilized for Rivera-Banchs' drug trafficking activities. (*Id*.) He further stated that, based on his training and experience, he knew that drug dealers often use rental properties as a mechanism to launder illegal drug proceeds. (*Id.* at 3–4.) Agent Smith further indicated that the search warrants in case number 20-MJ-531-MJP included warrants for Teralta Street, 478 Newbury Street, the residence of Rivera-Banchs' mother, and 64 Lang Street. (Smith Aff. at 3, 4 in 20-MJ-543-MJP-1.) In executing these warrants, law enforcement found a Bentley automobile worth approximately $40,000 at Rivera-Banchs' mother's house and a Chevrolet Corvette at 64 Lang Street. (*Id.* at 4.) Agent Smith averred that, based on his training and experience, "drug dealers often purchase expensive automobiles . . . [and] that expensive automobiles and other evidence of unexplained wealth exceeding legitimate sources of income are evidence of drug dealing and of money laundering." (Smith Aff. at 4 in 20-MJ-543-MJP-1.)

Further, Agent Smith's affidavit describes a monitored telephone conversation between Rivera-Banchs and Defendant after Rivera-Banchs was incarcerated and in which Rivera-Banchs was insistent that Defendant locate "a set of keys inside a grey

bag with a black zipper which was concealed in one of the bedrooms in or near a dresser or night stand." (*Id.* at 5.) Rivera-Banchs specifically asked Defendant to locate a key with a "B" on it inside the concealed bag, which Agent Smith indicated appeared to be the key to the Bentley automobile. (*Id.*) Rivera-Banchs told Defendant that the bag contained keys to the cars and some rental properties, and he directed Defendant to return the keys to the bag and conceal it. (*Id.*) Agent Smith indicated that the concealment of the bag, Rivera-Banchs' insistence that Defendant find it, and then Rivera-Banchs' direction to Defendant to conceal the bag after it was located demonstrated that Rivera-Banchs did not want the bag located by law enforcement. (*Id.* at 5–6.) Agent Smith explained that the car keys and keys to the rental properties, and possibly other keys located in the concealed bag, could lead to storage locations of drug proceeds, evidence of unexplained wealth, drug trafficking and/or money laundering. (*Id.* at 6.)

After carefully reviewing and considering the search warrant application and in applying the totality of the circumstances approach, as required by law, the undersigned determined that there was a fair probability that contraband or evidence of a crime—namely a concealed bag of keys—would be found at 61 Teralta Street.

Finally, a defendant seeking to suppress evidence bears the burden of showing that disputed issues of material fact exist before an evidentiary hearing is required. *United States v. Culotta*, 413 F.2d 1343, 1345 (2d Cir. 1969), *cert. denied*, 396 U.S. 1019 (1970) (a district court is "not required as a matter of law to hold an evidentiary hearing if [defendant's] moving papers did not state sufficient facts which, if proven,

would have required the granting of the relief requested by [the defendant]"). Indeed, there is no requirement that a court hold an evidentiary hearing where a defendant's allegations are general and conclusory. *See Grant v. United States*, 282 F.2d 165, 170 (2d Cir. 1960); *see also United States v. Pena*, 961 F.2d 333, 399 (2d Cir. 1992) (affidavits must be "specific, detailed, and nonconjectural"); *United States v. Gillette*, 383 F.2d 843, 848–49 (2d Cir. 1967) (defendant must submit his own affidavit or an affidavit from a person who has personal knowledge of the relevant facts in support of the relief sought).

Defendant's request for a hearing is rote and does not raise any definite, specific, detailed, nonconjectural facts to require such a hearing. Defendant vaguely contends that any tangible items taken from "the residence and person of the Defendant" was in violation of her Fourth Amendment rights and New York's Criminal Procedure Law. (Vanderbrook Aff. at 4.) However, Defendant does not specify to what "residence" she is referring or what items were allegedly taken from the residence or her person. She further does not provide any detail as to how her rights were violated. Based upon the forgoing, the undersigned recommends that the District Court deny Defendant's request for a hearing and motion for suppression of tangible evidence seized pursuant to the search warrants.

## DECISION AND ORDER

Currently pending before this Court is Defendant's motion for severance based upon spillover prejudice and statement of co-defendants. (Vanderbrook Aff. at 14–16.) Defendant also moves to inspect the grand jury minutes. (*Id*. at 16.)

## BACKGROUND

With respect to spillover prejudice, Defendant contends that the trial of this matter will last several months and will include voluminous evidence. (Vanderbrook Aff. at 14.) Defendant believes that very little of the evidence will pertain to her and will instead focus on the investigation into her co-defendants' charged crimes for which Defendant has not been charged. (*Id.* at 14–15.)

The government opposed this motion asserting that the money laundering charge against Defendant was properly joined in the Indictment as the proceeds that were laundered by Defendant and co-defendant Rivera-Banchs came from drug crimes for which Rivera-Banchs is charged. (Gov't Resp. at 10.) The government also argued that "[t]he government's proof on the money laundering charge will necessarily entail proving up the drug conspiracy and other drug trafficking counts in which [Rivera-Banchs] is also charged." (*Id.* at 11.) Further, the government asserted that Defendant has not satisfied the heavy burden of demonstrating that severance is warranted by showing that any prejudice to her outweighs the benefits of a joint trial.

With respect to seeking severance based upon statements of her co-defendants, Defendant indicated that the government had not yet provided her counsel with the post-arrest statements of her co-defendants and, therefore, did not know if they incriminated Defendant. (*Id.* at 16.) Nevertheless, Defendant moved for preclusion of her co-defendants' statements, or, in the alternative, severance. At oral argument, the government indicated that during his interview with law enforcement, Rivera-

Banchs stated that Defendant was not involved in the activities alleged in the criminal complaint.

As for Defendant's motion to inspect the grand jury minutes, Defendant asserts that she was aware that Rivera-Banchs owned rental properties and other businesses and, therefore, thought the money Rivera-Banchs put into her account was legitimate. Defendant contends that her belief as to where the money originated would have been important for the grand jury to know when deciding whether to indict her. To that end, Defendant requested an inspection of the grand jury minutes to determine if the grand jury knew that this is what Defendant thought. Defendant also requested a hearing on this issue.

At oral argument, the government objected to an *ex parte* review of the grand jury minutes or a hearing regarding same. The government argued that it was not aware of any cases providing that when presenting a case to the grand jury the government is required to present all details of any defense Defendant might have. The government indicated that it presented the grand jury with bank records showing money going into and out of Defendant's account. The government further argued that the "ignorant, uninformed wife defense" was raised at proffer after Defendant was indicted.

***Defendant's Motion for Severance.***

### a.    *Severance of Defendants Based on Spillover Prejudice.*

Federal Rule of Criminal Procedure 14(a) provides that "[i]f the joinder of offenses or defendants in an indictment ... or a consolidation for trial appears to

prejudice a defendant or the government, the court may ... sever the defendants' trials[.]" Fed. R. Crim. P. 14(a). The decision to sever a trial pursuant to Rule 14 is "committed to the sound discretion of the trial judge." *United States v. Delgado*, 972 F.3d 63, 81 (2d Cir. 2020), *cert. denied*, 141 S. Ct. 1114 (2021) (citation omitted).

The party requesting severance must demonstrate substantial prejudice: "when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993); *see also Delgado*, 972 F.3d at 81 ("to demonstrate entitlement to severance the defendant must show prejudice so severe as to amount to a denial of a constitutionally fair trial, or so severe that his conviction constituted a miscarriage of justice.") (citation omitted); *United States v. Cardascia*, 951 F.2d 474, 482 (1991) (in order to successfully challenge the denial of a request for severance, a defendant "must establish prejudice so great as to deny him a fair trial"); *United States v. Friedman*, 854 F.2d 535, 563 (2d Cir. 1988), *cert. denied*, 490 U.S. 1004 (1989) ("[T]he defendant must show that he or she suffered prejudice so substantial as to amount to a 'miscarriage of justice.'") (citations omitted). "That the defendant would have had a better chance of acquittal at a separate trial does not constitute substantial prejudice." *United States v. Carson*, 702 F.2d 351, 366 (2d Cir. 1983), *cert. denied*, 462 U.S. 1108 (1983).

A powerful presumption favors joint trials of defendants indicted together based upon the underlying policies of efficiency, avoiding inconsistent verdicts, providing a "more accurate assessment of relative culpability," avoiding victims and witnesses having to testify repeatedly, and avoiding the random favoring of "the last-tried defendants who have the advantage of knowing the prosecution's case beforehand." *Richardson v. Marsh*, 481 U.S. 200, 210 (1987); *see also Cardascia*, 951 F.2d at 482 ("The deference given by an appellate court to a trial court's severance decision reflects the policy favoring joinder of trials, especially when the underlying crime involves a common plan or scheme and defendants have been jointly indicted."). Further, "[j]oint trials serve the interests of the government, the accused, and the public by eliminating the additional expense and repetition associated with successive prosecutions." *United States v. Thompson*, 504 F. Supp. 3d 160, 173 (W.D.N.Y. 2020) (Wolford, J.) (citing *United States v. Mc*Grath, 558 F.2d 1102, 1106 (2d Cir. 1977), *cert. denied*, 434 U.S. 1064 (1978) and *United States v. Lyles*, 593 F.2d 182, 191 (2d Cir. 1979), *cert. denied*, 440 U.S. 182 (1079)).

Defendant seeks severance pursuant to Fed. R. Crim. P. 14(a), asserting that she will suffer spillover prejudice if she is not severed from her co-defendants. Severance is not warranted in this case because Defendant has failed to satisfy her "heavy burden" that such relief is required. *United States v. Sotomayor*, 592 F.2d 1219, 1227 (2d Cir. 1079), *cert. denied sub nom.*, *Crespo v. United States*, 442 U.S. 919 (1979) (finding that defendant seeking severance based upon spillover prejudice failed to meet his "heavy burden" for such relief.)

Further, Defendant has not demonstrated that the evidence presented against her co-defendants will substantially prejudice her if presented at a joint trial. The Second Circuit has provided that "the fact that evidence may be admissible against one defendant but not another does not necessarily require a severance." *United States v. Rittweger*, 524 F.3d 171, 179 (2d Cir. 2008), *cert. denied*, 555 U.S. 1202 (2009) (citation omitted); *see also United States v. Chang An–Lo*, 851 F.2d 547, 557 (2d Cir. 1988), *cert. denied*, 488 U.S. 966 (1988) ("differing levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials.") (citation omitted).

It is well established that limiting instructions provided to the jury can be sufficient to militate the risk of prejudice and the undersigned believes that is true in this case. *Zafiro*, 506 U.S. at 539; *United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003) (even where risk of prejudice is high, "less drastic measures—such as limiting instructions—often suffice as an alternative to granting a Rule 14 severance motion"); *United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003) (stating that this was not a case "in which the sheer volume and magnitude of the evidence against one defendant so dwarfs the proof presented against his co-defendant that a severance is required to prevent unacceptable spillover prejudice ... especially ... since the district court explicitly instructed the jury to consider the defendants individually"); *United States v. Miller*, 116 F.3d 641, 679 (2d Cir. 1997), *cert. denied,* 524 U.S. 905 (1998) (noting that spillover prejudice may be remedied through clear judicial instructions).

Defendant has not rebutted the powerful presumption in favor of jointly trying her with her co-defendants. The thrust of her argument for severance is that the majority of the evidence the government will present at trial will not pertain to her and that it could taint the jury's view of her. However, while there will undoubtedly be a significant amount of evidence presented at trial that does not directly involve Defendant, any potential prejudice to Defendant can be addressed with a curative instruction. Based on the forgoing, the undersigned determines that Defendant has failed to demonstrate that she will suffer prejudice if her case is not severed from that of her co-defendants and denies Defendant's motion for severance based on spillover prejudice.

### b. *Severance Based on Statements of Co-Defendants.*

The government represented at oral argument that Rivera-Banchs stated that Defendant was not involved in the crimes charged in the criminal complaint. The parties did not provide any information to the undersigned regarding any statements made by co-defendant Richard Carrion. However, the district court can re-visit this issue if any statements by Mr. Carrion implicate Defendant. For this reason, the undersigned denies Defendant's motion for severance based on co-defendant's statements.

**Defendant's Motion to Inspect Grand Jury Minutes.**

"[A] presumption of regularity attaches to grand jury proceedings...." *United States v. Smith*, 105 F. Supp. 3d 255, 259 (W.D.N.Y. 2015) (citation omitted); *United States v. Torres*, 901 F.2d 205, 232 (2d Cir. 1990) ("Grand jury proceedings carry a

presumption of regularity.") (quoting *Hamling v. United States*, 418 U.S. 87, 139 n.23 (1974)), *cert. denied*, 498 U.S. 906 (1990)). A party seeking disclosure bears the burden of establishing a "particularized need" or "compelling necessity" for such disclosure that outweighs the policy of grand jury secrecy. *Douglas Oil Co. of Cal. v. Petrol Stops Northwest*, 441 U.S. 211, 223 (1979); *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400 (1959) ("The burden ... is on the defense to show that a 'particularized need' exists for the minutes which outweighs the policy of secrecy."). This requirement extends to legal instructions given to the grand jury. *Smith*, 105 F. Supp. 3d at 260.

Speculation that the grand jury was improperly instructed is insufficient to overcome the rule of secrecy in grand jury proceedings that is embodied in Fed. R. Crim. P. 6(e). *See, e.g., United States v. Donald*, No. 07-CR-6208L, 2009 WL 270181, at *6 (W.D.N.Y. Feb. 4, 2009), *report and recommendation adopted*, 2009 WL 960209 (W.D.N.Y. 2009), *aff'd*, 417 F. App'x 41 (2d Cir. 2011); *United States v. Jailall*, No. 00-CR-069 EWS, 2000 WL 1368055, at *2 (S.D.N.Y. Sept. 20, 2000) (rule of secrecy, which can only be overcome by a showing by the defendant that grounds exist to dismiss the indictment based upon matters that occurred in the grand jury, applies to legal instructions provided to the grand jury).

Defendant has not satisfied her burden of demonstrating a "particularized need" to inspect the grand jury minutes. Defendant's motion is based solely on speculation that the grand jury might not have been instructed about one of Defendant's possible defenses—that she believed the money in her bank account

represented the proceeds from Rivera-Banchs' legitimate businesses. This assertion is insufficient to breach the secrecy of the grand jury proceeding in this case. For these reasons, the undersigned denies Defendant's request for inspection of the grand jury minutes.

## CONCLUSION

Based on the forgoing, the undersigned

1.      Denies Defendant's motion for severance based upon spillover prejudice;

2.      Denies Defendant's motion for severance based on statements of co-defendants; and

3.      Denies Defendant's motion for inspection of the grand jury minutes.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation and Decision and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York.

The district court will ordinarily refuse to consider on de novo review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paterson Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order**. *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by

legal authority." Failure to comply with the provisions of Rule 59(b) may result in the District Court's refusal to consider the objection.

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

DATED: November 8, 2021
Rochester, New York

MARK W. PEDERSEN
United States Magistrate Judge